1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   SABRENDA WYNN,                          CASE NO. C15-5030JLR

11                   Plaintiff,              ORDER

12          v.

13   CAROLYN COLVIN,

14                   Defendant.

15                        **I.      INTRODUCTION**

16          Plaintiff Sabrenda Wynn appeals a final decision of the Commissioner of the

17   Social Security Administration ("the Commissioner") denying her application for

18   Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income

19   ("SSI") under Title XVI of the Social Security Act.  *See* 42 U.S.C. §§ 423(d)(1)(A),

20   1382c(a)(3).  The Commissioner's final decision follows a hearing before an

21   Administrative Law Judge ("ALJ"), which represents the final decision of the

22   Commissioner for purposes of this judicial review.  The court has considered the

1  administrative record (AR (Dkt. # 11) (sealed)), the ALJ's decision (ALJ (Dkt. # 11-2 at

2  25-48)), the parties' memoranda, and the applicable law.  Being fully advised, the court

3  AFFIRMS the Commissioner's final decision.

## II.    BACKGROUND

The parties generally agree[1] on the following procedural history:  On August 1,

2011, Ms. Wynn filed concurrent claims for SSI and DIB, alleging disability beginning

May 1, 2009,[2] due to mental and physical impairments and pain.  Ms. Wynn's date last

insured was December 31, 2013.  On October 4, 2011, her claims were initially denied,

and on January 13, 2012, her claims were again denied upon reconsideration.  On

February 29, 2012, Ms. Wynn requested a hearing.  On March 29, 2013, an ALJ

conducted a hearing with Ms. Wynn, her attorney, and a vocational expert in attendance.

On May 8, 2013, the ALJ found Ms. Wynn not disabled.  On June 27, 2013, Ms. Wynn

requested administrative review.  On November 1, 2014, the Appeals Council declined

review, rendering the ALJ's decision the final decision of the Commissioner for purposes

of judicial review.  Ms. Wynn timely appealed the Commissioner's decision to this court.

*See* 42 U.S.C. § 405(g).

---

[1] (*See* Plf. Mem. (Dkt. # 30) at 2; Def. Mem. (Dkt. # 29) at 2 ("The Commissioner generally concurs with Plaintiff's recitation of the Procedural History . . . , but clarifies that Plaintiff amended her alleged onset date to February 1, 2011 . . . .").)

[2] Ms. Wynn later amended her alleged onset date to February 1, 2011.  (*See* Dkt. # 11-2 at 56.)

1    The ALJ applied the required five-step sequential evaluation process for

2  determining whether a person is disabled.[3]  At step one, the ALJ found that Ms. Wynn

3  did not perform substantial gainful activity during the period at issue.  (Dkt. # 11-2 at 27.)

4  At step two, she found Ms. Wynn had established severe impairments of obesity, hallux

5  valgus, bunions, degenerative disk disease, fibromyalgia, headaches, tobacco use

6  disorder, major depressive disorder, anxiety disorder, and post-traumatic stress disorder

7  ("PTSD").  (*Id.*)  At step three, the ALJ found Ms. Wynn did "not have an impairment or

8  combination of impairments that [met] or medically equal[ed] the severity of the

9  impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1."[4]  (Dkt. # 11-2 at 28-

10  30.)

11    The ALJ then assessed Ms. Wynn with Residual Functional Capacity ("RFC") to

12  perform sedentary work with a sit-stand option with changes every 30 minutes.  (*Id.* at

13  30.)  The ALJ found that Ms. Wynn could occasionally crouch, but never climb ladders,

14

15    [3] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-42
    (1987); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (listing the five steps).  In
16  steps one through four, the burden of proof rests upon the claimant to establish a prima facie case
    of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  This
17  burden is met once a claimant establishes that a physical or mental impairment prevents her from
    engaging in her previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant
18  cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the
    Commissioner to show that (1) the claimant can make an adjustment to other work; and (2)
19  specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r
    of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If a claimant cannot make an
20  adjustment to other work in the national economy, the claimant is "disabled."  20 C.F.R.
    §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

21    [4] If the claimant's severe impairments "meet or equal" one or more of the listed
    impairments, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),
22  416.920(a)(4)(iii).  The ALJ found that that was not the case here, however, so she proceeded to
    step four in the five-part sequential process.

ORDER- 3

1   ropes, or scaffolds.  (*Id.*)  The ALJ found that Ms. Wynn could perform unskilled work

2   with simple routine tasks and could not have interaction with the general public, but

3   could have occasional superficial interaction with co-workers.  (*Id.*)  The ALJ also found

4   that Ms. Wynn must deal with things rather than people and that she is off-task five

5   percent of the workday.  (*Id.*)

6          At step four, the ALJ found that Ms. Wynn proved that she could not perform her

7   past relevant work of cleaner, housekeeper, horticultural worker, outside deliverer, and

8   lot attendant.  (*Id.* at 39-40.)  At step five, the ALJ found that Ms. Wynn could perform a

9   significant number of jobs in the national and regional economy, such as document

10  preparer, final assembler, and circuit board touch up screener, and therefore she was not

11  disabled.  (*Id.* at 41-42.)

12         Ms. Wynn timely appealed the ALJ's decision to this court.  She raises the

13  following issues for review:  (1) whether the ALJ provided sufficient reasons for

14  discrediting Ms. Wynn's testimony, (2) whether the ALJ provided sufficient reasons for

15  discrediting the lay testimony of Daniel Gripp, (3) whether the ALJ properly evaluated

16  the medical opinions, including the medical evaluations of examining physician, Dr.

17  Mark Heilbrunn and treating physician, Dr. Brenda Grant, and the psychological

18  evaluations of Drs. Michael Brown and Kimberly Wheeler, and (4) whether substantial

19  evidence supports the ALJ's RFC finding and hypothetical to the vocational expert such

20  that the ALJ's step five finding of "not disabled" is likewise supported by substantial

21  evidence.

22  //

ORDER- 4

# III.    ANALYSIS

## A. Standards of Review

Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision in order to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).   The court must review the "record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citations and quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

A court cannot substitute its judgment for that of the ALJ, *Garrison*, 759 F.3d at 1010 (citing *Andrews*, 53 F.3d at 1039), and will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Furthermore, the court will not reverse the Commissioner's decision for harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch*, 400 F.3d at 679.  An error is harmless when it would not "alter[ ] the outcome of

1    the case." *Moline v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[T]he burden of

2    showing that an error is harmful normally falls upon the party attacking the agency's

3    determination."  *Id*. at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

4    **B.  Ms. Wynn's Credibility**

5           The ALJ found that Ms. Wynn's impairments could reasonably be expected to

6    cause some of her alleged symptoms, but the ALJ also found that Ms. Wynn's statements

7    concerning intensity, persistence, and the limiting effects of her symptoms were not

8    credible.  (Dkt. # 11-2 at 31.)  Ms. Wynn asserts that the ALJ provided legally

9    insufficient reasons for discrediting her testimony concerning her symptoms.  (Plf. Mem.

10   at 15-18.)  The ALJ provided multiple reasons for discounting the credibility of Ms.

11   Wynn's subjective statements, including (1) inconsistencies between Ms. Wynn's

12   allegations and the investigation conducted by the Cooperative Disability Investigations

13   Unit ("CDIU"), (2) inconsistencies between Ms. Wynn's allegations and the medical

14   record, (3) indications of exaggeration for secondary gain or drug-seeking behavior, and

15   (4) evidence that Ms. Wynn stopped working for reasons other than disability.  (Dkt. #

16   11-2 at 31, 35.)

17          Where, as here, a claimant has presented evidence of an underlying impairment,

18   and the government does not argue that there is evidence of malingering, an ALJ's

19   reasons for discounting the credibility of a claimant's testimony concerning subjective

20   symptoms must be "specific, clear, and convincing."  *See Burrell v. Colvin*, 775 F.3d

21   1133, 1136 (9th Cir. 2014).  In weighing the claimant's credibility, the ALJ may consider

22   objective medical evidence and the claimant's treatment history, as well as the claimant's

1    daily activities, work record, and the observations of physicians and third parties with

2    personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d

3    1273, 1284 (9th Cir. 1996).

4         Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation,

5    such as the reputation for lying, prior inconsistent statements concerning the

6    symptoms, . . . other testimony by the claimant that appears less than candid, [and]

7    unexplained or inadequately explained failure to seek treatment or to follow a prescribed

8    course of treatment."  *Smolen*, 80 F.3d at 1284.  For instance, the ALJ may consider

9    inconsistencies either within the claimant's testimony or between the testimony and the

10   claimant's conduct.  *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th

11   Cir. 2010).  Another valid consideration includes "whether the claimant engages in daily

12   activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040.  The

13   court may uphold the ALJ's credibility decision overall even if not all of the ALJ's

14   reasons for rejecting the claimant's testimony are upheld.  *See Batson v. Comm'r of Soc.*

15   *Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

16        Ms. Wynn argues that the ALJ's reasons were not convincing because the CDIU

17   investigator caught her on a single day and she had good days and bad days of fluctuating

18   symptoms.  (Plf. Mem. at 16-17.)  Thus, the inconsistencies between her testimony and

19   the CDIU report could have been caused by fluctuating symptoms.  However, her

20   allegedly fluctuating symptoms do not explain her statements to the CDIU investigator

21   that Mr. Gripp, her roommate, is also her partner, that he was bedridden, and that she

22   performed all household chores and served as Mr. Gripp's full-time caregiver.  These

1    statements are inconsistent with Ms. Wynn's reports of significant limitations performing

2    the activities of daily living and undermine her credibility.  The information contained in

3    the CDIU report is a specific, clear, and convincing basis for discounting Ms. Wynn's

4    credibility.  *See Wolf v. Colvin*, No. 3:14-cv-01507-MC, 2015 WL 4415630, at *8 (D. Or.

5    July 16, 2015) (concluding that an ALJ properly relied upon a CDIU report to discount

6    plaintiff's credibility); *Abdulwahab v. Colvin*, No. C14-00920-RAJ, 2015 WL 2126887,

7    at *7 (W.D. Wash. May 6, 2015) (same); *Sours v. Colvin*, No. 6:13-cv-01528-SI, 2014

8    WL 4793894, at *6 (D. Or. Sept. 25, 2014) (same).

9          Ms. Wynn argues that the "only aspect of the medical evidence contrary to her

10   testimony was just the reviewing physician testimony."  (Plf. Mem. at 17.)  However, the

11   ALJ cites to specific portions of medical examinations that are inconsistent with Ms.

12   Wynn's testimony concerning her symptoms.  For example, the ALJ cites medical

13   records indicating that Ms. Wynn was "consistently alert, oriented, and not in acute

14   distress during examinations, despite claims of significant pain," "walked with a normal

15   gait," and "demonstrated movement and full strength of her upper and lower extremities"

16   during medical examinations.  (Dkt. # 11-2 at 35 (citing specific support throughout the

17   medical record).)  The inconsistency between the medical record and Ms. Wynn's

18   reported symptoms is a convincing reason to discount her testimony.  *Carmickle v.*

19   *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with

20   the medical record is a sufficient basis for rejecting claimant's subjective testimony.").

21   The inconsistencies in the record regarding Ms. Wynn's reported symptoms are clear and

22   convincing reasons to discount her credibility.

1    The ALJ also discounted Ms. Wynn's testimony based on the ALJ's finding that

2    Ms. Wynn exaggerated her symptoms for secondary gain and had a record of engaging in

3    drug seeking behavior.  (Dkt. #11-2 at 36.)  The ALJ cited specific examples in the

4    record where Ms. Wynn embellished her symptoms or where her behavior (as reported by

5    the CDIU investigator) was inconsistent with her testimony,  her statements to medical

6    providers, or her behaviors during examinations.  (*Id*.)  The ALJ also cited a specific

7    notation in the medical record indicating that Ms. Wynn engaged in drug seeking

8    behavior, appeared to exaggerate her symptoms to obtain narcotics, and had failed a urine

9    drug screen.  (*Id*.)  An ALJ may appropriately consider "symptom exaggeration in the

10   context of secondary gain" in discounting a claimant's credibility.  *See Haynes v. Colvin*,

11   No. 13-35724, 2015 WL 3620679, at *1 (9th Cir. June 11, 2015); *see also Edlund v.*

12   *Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (noting that the ALJ discounted

13   claimant's testimony because the claimant "was exaggerating his complaints of physical

14   pain in order to receive prescription pain medication to feed his Valium addiction.").

15       Finally, the ALJ also stated that she discounted Ms. Wynn's credibility because

16   "she admitted that she stopped working at her last job because she was fired for suspected

17   theft, not due to any physical or mental impairments."  (Dkt. # 11-2 at 36.)  The Ninth

18   Circuit has indicated that this is a valid basis for an ALJ to discount a claimant's

19   subjective complaints.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

20   (holding that the ALJ's reliance on claimant's admission that he stopped work for reasons

21   other than disability, his delay in seeking medical attention, and his failure to seek

22   treatment despite complaints of severe pain, were specific and cogent reasons for

1    discounting claimant's pain testimony).  Because the ALJ's reasons supporting her

2    adverse credibility determination concerning Ms. Wynn are clear and convincing, the

3    court affirms the ALJ's finding.

4    **C.  Mr. Gripp's Credibility**

5        Daniel Gripp submitted a declaration in which he stated that he had been

6    roommates with Ms. Wynn for 5-6 years, but that she was not his caregiver.  (Dkt. # 11-6

7    at 67.)  He reports that although Ms. Wynn starts the household chores, he usually

8    finishes them.  (*Id.*)  He reports that Ms. Wynn has two to three migraines a week that

9    last up to three or four days, panic attacks that prevent her from leaving the house, and

10    that he does most of the shopping.  (*Id.*)  The ALJ stated that she considered Mr. Gripp's

11    declaration, but relied instead on the medical opinions to which she gave significant

12    weight "[f]or the reasons provided above."  (Dkt. # 11-2 at 40.)

13        The ALJ may not disregard lay witness testimony without comment, but instead

14    "must give reasons that are germane to each witness."  *Molina v. Astrue*, 674 F.3d 1104,

15    1114 (9th Cir. 2012).  The ALJ, however, is not required to discuss every such witness on

16    an individualized, witness-by witness basis.  *Id.* " Rather, if the ALJ gives germane

17    reasons for rejecting testimony by one witness, the ALJ need only point to those reasons

18    when rejecting similar testimony by a different witness."  *Id.*; *see also Valentine v.*

19    *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our

20    conclusion that the ALJ provided clear and convincing reasons for rejecting [the

21    claimant's] own subjective complaints, and because [the lay witness's] testimony was

22    similar to such complaints, it follows that the ALJ gave germane reasons for rejecting

1   [the lay witness's] testimony.").  Further, even where an ALJ fails to comment upon lay

2   witness testimony, the error is harmless where the same evidence that the ALJ referred to

3   in discrediting the claimant's claims also discredits the lay witness's claims.  *Molina*, 674

4   F.3d at 1122.

5        Here, Mr. Gripp's declaration is similar to portions of Ms. Wynn's testimony.

6   Specifically, they both testify that Ms. Wynn is not Mr. Gripp's caregiver, but only his

7   roommate,[5] that Mr. Gripp contributes to the household chores, and that Ms. Wynn

8   suffers from migraines[6] and panic attacks[7] that prevent her from engaging in certain

9   activities.  The same evidence that the court found provided clear and convincing reasons

10  for rejecting Ms. Wynn's testimony on these topics provides germane reasons for

11  discrediting or rejecting Mr. Gripp's testimony.  The ALJ pointed to this evidence when

12  she referred to "the reasons provided above" in her written decision for discounting Mr.

13  Gripp's testimony.  (Dkt. # 11-6 at 40.)  Because the ALJ pointed to germane reasons in

14  the record for discounting Mr. Gripp's testimony, the court affirms the ALJ's finding.

15  *Molina*, 674 F.3d at 1114.  In any event, any failure by the ALJ to sufficiently comment

16  on Mr. Gripp's testimony constitutes harmless error because the same evidence the ALJ

---

17

18     [5] (Dkt. # 11-2 at 57 (Ms. Wynn testifying that she lives with her "roommate," Mr. Gripp, and that he is not her "significant other"); Gripp Decl. (Dkt. # 11-6 at 67-68) at 1 (testifying that he and Ms. Wynn "have been roommates for 5-6 years")).

19

20     [6] (Dkt # 11-2 at 74-78, 87-88 (Ms. Wynn testifying that her migraines, fibromyalgia, and back pain limit her ability to do certain activities); Gripp Decl. at 1 (testifying about Ms. Wynn's migraines and their impact on her activities).)

21

22     [7] (Dkt.  #11-2 at 81-83 (Ms. Wynn testifying that her panic attacks limit her ability to do certain activities); Gripp Decl. at 1 (testifying about Ms. Wynn's panic attacks and how they limit her activities).)

ORDER- 11

1    refers to in discrediting Ms. Wynn's testimony also discredits Mr. Gripp's testimony.  *Id.*

2    at 1122.

3    **D.  Medical Evidence**

4         Ms. Wynn argues that the ALJ erred in assessing the medical opinions of treating

5    physician Dr. Brenda Grant, M.D., examining physician Dr. Mark Heilbrunn, M.D., and

6    examining psychologists, Michael L. Brown, Ph.D., and Kimberley Wheeler, Ph.D.  (Plf.

7    Mem. at 4-14.)  The court considers each opinion in turn.

8         **1.  Standards for Reviewing Medical Opinion Evidence**

9         As a matter of law, more weight is given to a treating physician's opinion than to

10   that of a non-treating physician because a treating physician "is employed to cure and has

11   a greater opportunity to know and observe the patient as an individual." *Magallanes v.*

12   *Brown*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th

13   Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to

14   either a physical condition or the ultimate issue of disability, and it can be rejected

15   whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ

16   rejects the opinion of a treating or examining physician that is not contradicted by another

17   doctor, the ALJ must give clear and convincing reasons for doing so; if an ALJ rejects a

18   treating or examining physician's opinion that is contradicted by another, the ALJ must

19   give specific and legitimate reasons for doing so. *Reddick v. Chater*, 157 F.3d 715, 725

20   (9th Cir.1988).  The ALJ must do more than merely state his or her conclusions. *Id.* The

21   ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical

22   evidence, stating his [or her] interpretation thereof, and making findings." *Id.* (citing

1    *Magallanes,* 881 F.2d at 751).  Indeed, the ALJ "must set forth his [or her] own

2    interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing

3    *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

4         The opinions of examining physicians are to be given more weight than non-

5    examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating

6    physicians, the uncontradicted opinions of examining physicians may not be rejected

7    without clear and convincing reasons.  *Id.*  An ALJ may reject the controverted opinions

8    of an examining physician only by providing specific and legitimate reasons that are

9    supported by the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

10         Opinions from nonexamining medical sources are to be given less weight than

11   treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always

12   evaluate the opinions from such sources and may not simply ignore them.  In other

13   words, an ALJ must evaluate the opinion of a non-examining source and explain the

14   weight given to it.  SSR 96–6p, 1996 WL 374180, at *2.  Although "[t]he opinion of a

15   nonexamining physician cannot by itself constitute substantial evidence that justifies the

16   rejection of the opinion of either an examining physician or a treating physician," *Lester*,

17   81 F.3d at 830-31, a non-examining doctor's opinion may nonetheless constitute

18   substantial evidence if it is consistent with other independent evidence in the record.

19   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or

20   non-examining physicians may [ ] serve as substantial evidence when the opinions are

21   consistent with independent clinical findings or other evidence in the record."); *Orn*, 495

22   F.3d at 632-33.

1   Here, Ms. Wynn acknowledges that the ALJ need not meet the higher standard of

2   clear and convincing reasons applicable to uncontroverted medical opinions, but need

3   only provide specific and legitimate reasons that are supported by the record to reject

4   each of the controverted medical opinions at issue here or to accord those opinions less

5   weight. (*See* Plf. Mem. at 5, 9, 11, 12.)

6   **2. Dr. Brenda Grant**

7   Dr. Grant, who was one of Ms. Wynn's treating physicians, wrote a letter dated

8   March 18, 2013, regarding Ms. Wynn. (Dkt. # 11-8 at 10.) Dr. Grant stated that Ms.

9   Wynn suffers from fibromyalgia, migraines, and severe depression with psychotic

10  features. (*Id.*) Dr. Grant opined that Ms. Wynn is "significantly disabled" and "unable to

11  work." (*Id.*) Dr. Grant wrote that Ms. Wynn is "very limited in her ability beyond caring

12  for herself" and unable to keep a predictable schedule due to migraines. (*Id.*) Dr. Grant

13  submitted an additional statement to the Appeals Council after the ALJ's decision, which

14  repeats her conclusion that Ms. Wynn is disabled. (Dkt. # 11-15 at 20.)

15  The ALJ noted that Dr. Grant's opinion that Ms. Wynn is disabled is a judgment

16  reserved to the Commissioner. (Dkt. # 11-2 at 38-39.) The ALJ also pointed to "other

17  evidence in the record demonstrating a much higher level of functioning" than Dr.

18  Grant's opinion allows—such as Ms. Wynn's ability to serve as a full-time caregiver for

19  Mr. Gripp. (*Id.*) Indeed, Ms. Wynn reported to the CDIU investigator that she was Mr.

20  Gripp's full-time caregiver, which included caring for the house, cooking, cleaning,

21  shopping, and helping Mr. Gripp dress and bathe. (Dkt. # 11-7 at 117.) The ALJ

22  concluded that Ms. Wynn's "ability to serve as a full-time caregiver for Mr. Gripp

1   completely undermines [Dr. Grant's] opinion," and accordingly, she gave Dr. Grant's

2   opinion "little weight."  (Dkt. # 11-2 at 39.)

3         The ultimate determination regarding a claimant's disability or ability to work is

4   an administrative decision for the ALJ and not for the physician.  *McLeod v. Astrue*, 640

5   F.3d 881, 884-85 (9th Cir. 2011) ("The law reserves the disability determination to the

6   Commissioner."); 20 C.F.R. §§ 404.1527(d)(1), 404.1527(d)(3) (stating that "[a]

7   statement by a medical source that you are 'disabled' or 'unable to work' does not mean

8   that we will determine that you are disabled," and it is not entitled to "any special

9   significance.").  Thus, the ALJ did not err in disregarding the portion of Dr. Grant's

10  opinion letter that concludes that Ms. Wynn is disabled.[8]

11        In addition, specific, legitimate reasons for rejecting a physician's opinion may

12  include inconsistency with the claimant's level of activity.  *Tommasetti v. Astrue*, 533

13

14        [8] Ms. Wynn also argues that the ALJ had a duty to recontact Dr. Grant based on a
15  particular social security regulation which requires the ALJ to "make every reasonable effort to
    recontact [medical sources] for clarification when they provide opinions on issues reserved to the
16  Commissioner and the bases for such opinions are not clear."  (Plf. Mem. at 13-14 (citing SSR
    96-5p, 1996 WL 374183 at *2 (S.S.A. July 2, 1996)); Plf. Reply (Dkt. # 31) at 9.)  Here,
17  however, the bases for Dr. Grant's opinions were clear.  She opined that Ms. Wynn was disabled
    as a result of the diagnoses of fibromyalgia, migraines, and severe depression with psychotic
18  features.  (*See* Dkt. # 11-8 at 10.)  As discussed in the body of this decision, the ALJ
    appropriately discounted these opinions due to contravening evidence in the record.  Nothing in
19  the record indicates the ALJ was uncertain of the bases for Dr. Grant's opinion or otherwise
    found the record ambiguous.  Thus, the ALJ was not required by SSR 96-5p to recontact Dr.
20  Grant.  *See Cagney v. Colvin*, No. 13-cv-1766 BAS (JMA), 2015 WL 1385394, at *12 (S.D. Cal.
    Mar. 24, 2015); *Fisher v. Astrue*, No. CV 11-26-BLG-CSO, 2012 WL 589068, at *7 (D. Mont.
21  Feb. 22, 2012) (ruling that the ALJ had no duty to recontact the doctor where the bases of the
    doctor's opinions were not ambiguous); *see also Demers v. Colvin*, No. EDCV 12-01239-JEM,
22  2013 WL 866195, at *5 (C.D. Cal. Mar. 6, 2013) (finding no duty to recontact the treating doctor
    under SSR 96-5p where other medical evidence in the record is adequate for the ALJ to reach a
    determination on disability).

ORDER- 15

1    F.3d 1035, 1040-41 (9th Cir. 2008); *Morgan*, 169 F.3d at 601-02 (upholding the ALJ's

2    decision rejecting a physician's conclusion that the claimant suffered from marked

3    limitations because the claimant's reported activities of daily living contradicted that

4    conclusion).  Thus, the ALJ's remaining reasons for discounting the weight of Dr.

5    Grant's opinion—that other evidence in the record that  Ms. Wynn served as her disabled

6    boyfriend's fulltime caregiver contravenes Dr. Grant's opinion—constitutes another

7    specific and legitimate reason for according Dr. Grant's opinion little weight.

8         **3.  Dr. Mark Heilbrunn**

9         Examining physician, Dr. Heilbrunn, opined that Ms. Wynn can sit for 15-20

10   minutes uninterrupted, for a maximum of five hours in an eight-hour workday.  (Dkt. #

11   11-7 at 28.)  Dr. Heilbrunn based this opinion on Ms. Wynn's thoracolumbar back pain

12   and 2007 MRI evidence of multilevel degenerative disc disease.  (*Id.* at 23, 28.)  Ms.

13   Wynn reported that her thoracolumbar pain developed in 2007 and has become

14   progressively worse.  (*Id.* at 23.)  Dr. Heilbrunn also opined that Ms. Wynn can walk or

15   stand for 10 minutes uninterrupted for a maximum of three to four hours in an eight-hour

16   workday.  (*Id.* at 29.)  Dr. Heilbrunn stated that this limitation was "justified by lumbar

17   pain with positive straight leg raising." (*Id.*)  He also opined that Ms. Wynn has postural

18   limitations of climbing, balancing, stooping, kneeling, crouching, and crawling.  (*Id.*)  He

19   opined that Ms. Wynn can lift and carry five pounds both occasionally and frequently.

20   (*Id.*)

21        The ALJ gave Dr. Heilbrunn's opinion "little weight."  (Dkt. # 11-2 at 38.)  The

22   ALJ stated that Dr. Heilbrunn's opinion is "inconsistent with other evidence in the

1  record, and likely the result of [Ms. Wynn] exaggerating her limitations and pain

2  symptoms during the examination." (*Id.*)  The ALJ noted that Dr. Heilbrunn's sitting,

3  standing, and walking limitations are inconsistent with her actual level of functioning

4  based on her testimony that she flew to Michigan and Tennessee and her reports of

5  grocery shopping for up to an hour at a time.  (*Id.*; *see also id.* at 88-89 (Ms. Wynn

6  testifying about flying to Michigan and Tennessee); Dkt. # 11-6 at 14 (Ms. Wynn's self

7  report of spending up to an hour doing grocery shopping).)  Finally, the ALJ also noted

8  that Dr. Heilbrunn's opinion regarding Ms. Wynn's five-pound lifting/carrying limitation

9  is inconsistent with Ms. Wynn's own testimony that she can lift 10 pounds.  (Dkt. 11-2 at

10  38; *see also id.* at 75.)

11        Given the inconsistencies between Ms. Wynn's reported activities and abilities

12  and Dr. Heilbrunn's assessed limitations, the ALJ found it likely that Dr. Heilbrunn's

13  opinions were the result of Ms. Wynn's exaggeration of both her limitations and pain

14  symptoms.  (Dkt. # 11-2 at 38.)  "An ALJ may reject a treating physician's opinion if it is

15  based 'to a large extent' on a claimant's self-reports that have been properly discounted

16  as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing

17  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) and *Fair v.*

18  *Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149

19  (9th Cir. 2001).  The court has already found no error in the ALJ's discounting of Ms.

20  Wynn's credibility.  *See supra* § III.B.  Except for Dr. Heilbrunn's opinion concerning

21  Ms. Wynn's sitting limitation, which is based in part on a 2007 MRI indicating

22  degenerative disk disease and in part on Ms. Wynn's report of thoracolumbar back pain,

ORDER- 17

1   Dr. Heilbrunn's remaining opinions are based largely, if not exclusively, on Ms. Wynn's

2   self reports of pain or demonstrations of her own limitations.  Thus, it was not error for

3   the ALJ to discount Dr. Heilbrunn's opinions on this basis.[9]

4          The ALJ also discounted Dr. Heilbrunn's opinions because they were inconsistent

5   with Ms. Wynn's testimony concerning her actual level of activity, which included

6   airplane trips to distant states and grocery shopping for up to an hour at a time.  (Dkt. #

7   11-2 at 38.)  As discussed above, specific, legitimate reasons for rejecting a physician's

8   opinion may include inconsistency with a claimant's level of activity.  *Tommasetti*, 533

9   F.3d at 1040-41 (ruling that the ALJ could properly infer from claimant's travel to

10  Venezuela that he was not as physically limited as alleged); *Morgan*, 169 F.3d at 601-02.

11         Finally, portions of Dr. Heilbrunn's opinions contradict Ms. Wynn's own

12  testimony concerning her limitations.  Specifically, the ALJ notes that, although Dr.

13  Heilbrunn limits Ms. Wynn to lifting or carrying five pounds, Ms. Wynn testifies that she

14  is capable of lifting 10 pounds.  (Dkt. 11-2 at 38; *see id.* at 75.)  This was also an

15  appropriate basis for discounting Dr. Heilbrunn's opinion.  *See Magallanes*, 881 F.2d at

16  754 (concluding that conflicts between a treating physician's opinion and a claimant's

17  own testimony properly considered by an ALJ in rejecting the treating physician's

18

19         [9] Arguably, Dr. Heilbrunn's opinion concerning Ms. Wynn's sitting limitation is not
    based "to a large extent" on Ms. Wynn's self-reports because Dr. Heilbrunn also relied upon the
20  2007 MRI in reaching this opinion.  (Dkt. # 11-7 at 28.)  However, any error on the part of the
    ALJ in discounting Dr. Heilbrunn's opinion concerning Ms. Wynn's sitting limitation is
21  harmless because the ALJ nevertheless restricted Ms. Wynn to a sit/stand option to take into
    account this alleged limitation.  (*See* Dkt. # 11-2 at 38.)
22

1   opinion in favor of that offered by non-treating, non-examining physician); *see Morgan v.*

2   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (upholding an ALJ's

3   rejection of a treating physician's opinion where the "ALJ cited to testimony from [the

4   claimant] that conflicted with the" physician's testimony).  The court concludes that the

5   ALJ did not err in giving Dr. Heilbrunn's opinion little weight.

6       **4.  Dr. Michael L. Brown**

7       In his psychological evaluation of Ms. Wynn, Dr. Brown opined that Ms. Wynn

8   can remember and execute simple instructions, as well as sustain concentration on

9   simple, repetitive tasks.  (Dkt # 11-7 at 107.)  Nevertheless, Dr. Brown concluded that

10  "[g]iven the severity of her current psychiatric symptoms, she would not be able to work

11  repetitively at this time," or "work at a normal pace."  (*Id.*)  Overall, the ALJ gave Dr.

12  Brown's opinion "only some weight."  (Dkt. # 11-2 at 38.)  The ALJ accepted Dr.

13  Brown's opinion concerning Ms. Wynn's ability to perform simple routine tasks, but

14  rejected Dr. Brown's opinion concerning Ms. Wynn's inability to work repetitively or at

15  a normal pace.  (*Id.*)

16      Ms. Wynn argues that the ALJ failed to provide sufficient reasons for rejecting a

17  portion of Dr. Brown's opinion.  (*See* Plf. Mem. at 4-8.)  The court, however, disagrees.

18  In discounting Dr. Brown's opinion, the ALJ noted that Dr. Brown's opinion "is

19  inconsistent with other evidence in the record."  (Dkt. # 11-2 at 38.)  Indeed, the court

20  notes that Dr. Brown's conclusion that Ms. Wynn is unable to work repetitively is

21  inconsistent with Dr. Brown's own finding that Ms. Wynn can "sustain concentration on

22  simple, repetitive tasks."  (Dkt. # 11-7 at 107.)  The ALJ also points to Ms. Wynn's

1   statements to the CDIU investigator that she is a full-time caregiver and completes all

2   household tasks, as well as Ms. Wynn's statements in the record indicating that she

3   manages the household finances.  (Dkt. # 11-2 at 38; *see also* Dkt. # 11-7 at 117; Dkt #

4   11-6 at 14.)  As indicated above, these inconsistencies in the record with Dr. Brown's

5   conclusions constitute specific and legitimate reasons for rejecting a portion of Dr.

6   Brown's opinion.

7          The ALJ also stated that Dr. Brown's opinions concerning Ms. Wynn's inability to

8   work repetitively and at a normal pace are likely the result of Ms. Wynn's exaggeration

9   of her limitations during the examination.  A review of Dr. Brown's report indicates that

10  it is largely based on Ms. Wynn's self-reporting of symptoms.  (*See* Dkt. # 11-7 at 105-08

11  (repeatedly referencing Ms. Wynn's statements concerning her symptoms and

12  limitations).)  As discussed herein, an ALJ may reject a physician's opinion if it is based

13  to a large extent on a claimant's self reports that have been properly discounted.

14  *Tommasetti*, 533 at 1041; *Tonapetyan*, 242 F.3d at 1149.  The court has already

15  concluded that the ALJ's adverse credibility finding with respect to Ms. Wynn was not in

16  error.  *See supra* § III.B.  Accordingly, the court concludes that the ALJ did not err in

17  discounting Dr. Brown's opinion on this basis.

18         Finally, Ms. Wynn also argues the ALJ erred in rejecting various Global

19  Assessment of Functioning ("GAF") scores contained in the record, including the GAF

20  score of 38 assessed by Dr. Brown.  (Plf. Mem. at 7-8; Dkt. # 11-2 at 40; Dkt. # 11-7 at

21  106.)  A GAF score provides a measure for an individual's overall level of psychological,

22  social, and occupational functioning.  *Vanbibber v. Carolyn*, No. C13-546-RAJ, 2014

1  WL 29665, at *1 (W.D. Wash. Jan. 3, 2014) (citing Am. Psychiatric Ass'n, Diagnostic &

2  Statistical Manual of Mental Disorders 32-34 (4th ed. 2000)).  The ALJ stated that

3  although she had "thoroughly reviewed the clinical findings and functional assessments"

4  of the clinicians who provided GAF scores, she gave the scores "very little weight"

5  because they "lack probative value."  (Dkt. # 11-2 at 40.)  Specifically, the ALJ stated:

6  "In this case, it is not evident after reviewing the GAF scores in the record what the

7  clinicians were rating"—whether the scores represented "an attempt to rate symptoms *or*

8  function."  (*Id.* (italics in original).)  She also stated that because she found "the

9  claimant's statements regarding functioning [to be] less than fully credible, a [GAF]

10  score based on statements from the same source is of little value."  (Dkt. # 11-2 at 40.)

11       Although a GAF score "standing alone" does "not control determinations of

12  whether a [claimant's] mental impairments rise to the level of a disability," it is "relevant

13  evidence" of the claimant's ability to function, and therefore "may be a useful

14  measurement."  *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014)  The Ninth

15  Circuit, however, has recognized that "the GAF scale 'does not have a direct correlation

16  to the severity requirements in [the Social Security Administration's] mental disorders

17  listings.'"  *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir.2008) (some alterations

18  in *McFarland*) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)).  Thus, in

19  evaluating the severity of a claimant's mental impairments, a GAF score may help guide

20  an ALJ's determination, but an ALJ is not bound to consider it.  *Id.* (concluding that the

21  ALJ did not commit error by failing to mention the plaintiff's three GAF scores of 50);

22  *Deck v. Colvin*, 588 F. App'x 747, 748 (9th Cir. 2014) (unpublished) ("[T]he ALJ did not

1    err by failing to discuss . . . [the GAF] score because the score is used for treatment

2    purposes and not for rating a person's ability to work.") (citing *Garrison*, 759 F.3d at

3    1002 n. 4); *see also Howard v. Comm'r of Soc. Sec. Admin.*, 276 F.3d 235, 241 (6th Cir.

4    2002) ("While a GAF score may be of considerable help to the ALJ in formulating the

5    RFC, it is not essential to the RFC's accuracy.  The ALJ's failure to reference the GAF

6    score in the RFC, standing alone, does not make the RFC inaccurate."); *Baker v. Astrue*,

7    No. CV 08–3199–MLG, 2009 WL 279085, at *3 (C.D. Cal. Feb. 4, 2009) ("In evaluating

8    the severity of a claimant's mental impairments, a GAF score may help guide the ALJ's

9    determination, but an ALJ is not bound to consider it."); *Orellana v. Astrue*, 2008 WL

10   398834, at *9 (E.D. Cal. Feb. 12, 2008) ("While a GAF score may help the ALJ assess

11   Claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF

12   does not constitute an improper application of the law.").

13        Here, however, the ALJ did consider the GAF scores prior to rejecting them.

14   First, she indicated that she could not determine whether the GAF scores at issue here

15   were rating or conveying information that furthered her analysis of Ms. Wynn's

16   functional abilities.  (Dkt. # 11-2 at 40.)  Indeed, as the Commissioner points out, the

17   GAF scale "has two components:  the first part covers symptom severity, and the second

18   part covers functioning."  (Def. Mem. (Dkt. # 29) at 12 (quoting Am. Psychiatric Ass'n,

19   *Diagnostic & Statistical Manual of Mental Disorders* ("DSM") 32-33 (rev. 4th ed.

20   2000)).)  "The GAF score is the lower of the symptom severity score or the functioning

21   severity score."  *Gonzales v. Astrue*, No. CV 08-1108 AJW, 2009 WL 3756658, at *4

22   (C.D. Cal. Nov. 5, 2009).  Here, the ALJ explained that she could not tell if the GAF

1    scores represented symptom severity or function severity.  (Dkt. # 11-2 at 40 ("In this

2    case, it is not evident . . . what the clinicians were rating.").)  The court finds that this is a

3    specific and legitimate reason for discounting the weight of these GAF scores.

4         In addition, the ALJ found that the GAF scores had little value because they were

5    based on Ms. Wynn's less than credible statements concerning her symptoms and

6    functioning.  (*Id.*)  As the court discussed herein, because the ALJ correctly discounted

7    the credibility of Ms. Wynn's own testimony concerning her subjective complaints, the

8    ALJ could also discount the GAF scores which were based on those discredited

9    statements.  *See Tommasetti*, 533 F.3d at 1041; *see also Tonapetyan*, 242 F.3d at 1149

10   (ruling medical opinion premised on subjective reports may be discounted when record

11   supports ALJ in discounting claimant's credibility).  The court concludes that the ALJ did

12   not err in discounting the GAF scores at issue here, including the GAF score of 38

13   assigned by Dr. Brown.[10]

14   _____

15       [10] Ms. Wynn also complains that the ALJ ran afoul of Administrative Message 13066,
16   which states that GAF ratings are "opinion evidence."  *See* AM-13066.  The court notes,
     however, that the most recent version of the DSM does not include a GAF rating for assessment
     of mental disorders. DSM–V at 16–17 (5th ed. 2013).  Although the Social Security
17   Administration continues to receive and consider GAF scores from "acceptable medical sources"
     as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of
18   function, and unless the reasons behind the rating and the applicable time period are clearly
     explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning
19   for a disability analysis. *Moss v. Colvin*, No. C14-0194-RAJ, 2014 WL 4720546, at *9 (W.D.
     Wash. Sept. 22, 2014) (citing  AM–13066).  In any event, Administrative Message 13066
20   constitutes "an agency interpretation that does not impose judicially enforceable duties on either
     the ALJ or this Court." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir.
21   2010).  Such an agency interpretation is entitled to respect but only to the extent it has the power
     to persuade. *Id.*  For all the reasons stated above, the court concludes that the ALJ did not err in
22   her handling of the GAF scores at issue here, including Dr. Brown's GAF score.

### 5.  Dr. Kimberly Wheeler

In her psychological evaluation of Ms. Wynn, Dr. Wheeler opined that Ms. Wynn has mild limitations in her ability to understand, remember, and persist in tasks following simple instructions.  (Dkt. # 11-7 at 19.)  She assessed marked limitation in social functioning as it pertains to public contact and appropriate behavior in a work setting.  (*Id.*)

The ALJ gave Dr. Wheeler's opinion "some weight."  (Dkt. # 11-2 at 38.)  The ALJ found that Dr. Wheeler's opinion regarding Ms. Wynn's ability to perform simple routine tasks was supported by Ms. Wynn's performance on mental status examinations.  (*Id.* at 37-38.)  However, the ALJ also found that Dr. Wheeler's opinion regarding Ms. Wynn's marked limitations in social functioning was inconsistent with Ms. Wynn's ability to remain calm while talking with the CDIU investigator.  (*Id.* at 38.)  Indeed, the CDIU investigator stated that Ms. Wynn was "very relaxed" and was "focused and engaged" during the interview.  (Dkt. # 11-7 at 118.)  The ALJ also noted that Ms. Wynn's ability to go grocery shopping (Dkt. # 11-6 at 14) was inconsistent with Dr. Wheeler's opinion of marked social limitations (Dkt. # 11-2 at 38).  As has been repeatedly stated herein, specific, legitimate reasons for rejecting a physician's opinion may include inconsistency with a claimant's level of activity or functioning.  *See Tommasetti*, 533 F.3d at 040-41; *Morgan*, 169 F.3d at 601-02.  The court concludes that the ALJ provided sufficient reasons for according Dr. Wheeler's opinion only "some weight."

*//*

### E.  RFC Analysis

Ms. Wynn argues that because the ALJ improperly weighed the evidence cited above, her analysis of Ms. Wynn's RFC did not include all of her limitations and is not supported by substantial evidence.  (Plf. Mem. at 18.)  However, because the court found no error in the ALJ's assessment of the evidence and testimony discussed above, the hypothetical that the ALJ posed to the vocational expert contained all of the limitations that the ALJ found to be credible and supported by substantial evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).  Because the ALJ posed a hypothetical question to the vocational expert that incoporated an RFC assessment based on substantial evidence, there is substantial evidence supporting the ALJ's finding of "not disabled" at step five.  *See Bayliss*, 427 F.3d at 1217-18.

## IV.    CONCLUSION

Based on the reasons stated above and the relevant record, the court ORDERS that the decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).  JUDGMENT should be for the Commissioner and the case should be closed.

Dated this 21st day of September, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 25